WILLIAM E. AND SILAS P. TEFFT *et al. vs.* HERBERT E. LEWIS, Collector of Taxes, *et al.*

WASHINGTON—JANUARY 28, 1905.

PRESENT: Tillinghast, C. J., Douglas and Dubois, JJ.

(1)  *School Districts.   Taxes.*

Pub. Laws cap. 1101, of April 17, 1903, provided for the abolishing of all school districts January 1, 1904, and for the vesting of the title and interest of all property and estate of the districts in the respective towns.   It provided for an appraisal of such property and for the levying of a tax upon the whole town equal to the amount of such appraisal and for the remission to the taxpayers of each district of their proportional share of the appraised value of the school property in such district.

Complainants were citizens of the town of Hopkinton, their estates being located in a joint school district which comprised school district No. 7 in the town of Richmond and parts of districts 9 and 10 in Hopkinton.

Bill in equity seeking a perpetual injunction against the collection of a tax alleged that the commission appointed to appraise the property vested in the town of Hopkinton did not appraise the property belonging to said joint school district, which by virtue of said act vested in the towns of Richmond and Hopkinton as tenants in common; that the assessors of taxes of Hopkinton assessed a tax for a sum equal to the amount of the appraisal, and proceeded to remit to the taxpayers of the abolished school districts a proportional part of the appraised value of such property, but did not remit any amount to the taxpayers in said joint district.   The report of the appraisers was rendered to the court appointing them, and after being advertised was confirmed by the court.   The statute did not provide for a report:—

*Held*, that the assessment was illegal and void, since the provision requiring all the school district property to be appraised was mandatory and such

appraisal formed the basis of and was a condition precedent to the laying of any tax under said act.

*Held*, further, that the provisions in regard to the assessment of and remittance of the tax were for the benefit of the taxpayers and were also mandatory.

*Held*, further, that the assessment was illegal, since no remission of any part of the tax could be made to the taxpayers of the joint district.

(2)  *School Districts.    Taxes.*

*Held*, further, that, assuming that it was the duty of the commissioners to report to the court appointing them (the statute being silent on the subject), the appraisal being null and void, no act of the court could make it of any validity, and hence complainants were not bound by such confirmation.

(3)  *Estoppel.*

*Held*, further, that complainants were not estopped by reason of having been notified of the filing of the report and failing to object thereto.

(4)  *Statutes.*

Where the legislative purpose would be defeated if the prescription of the statute did not imply a prohibition to do the thing in any other way, and where the provision of a statute is the very essence of the thing which it requires to be done, it is imperative or mandatory.

BILL IN EQUITY to enjoin collection of a tax. Heard on bill, answer, and agreed statement of facts.

TILLINGHAST, C. J.   The complainants, who are taxpayers in the town of Hopkinton, bring this bill, in behalf of themselves and of all others who have a common interest in the subject-matter and event of the suit, against Herbert E. Lewis, collector of taxes for said town, and also against said town of Hopkinton in its corporate capacity, to enjoin the collection of a tax imposed upon the complainants and other taxpayers, in compliance, or intended  compliance, with Pub. Laws R. I. cap. 1101, passed April 17, 1903.   Section 1 of said act reads as follows:

"SECTION 1.   All the school districts in this state that have not prior to January 1, 1904, been abolished according to law shall be and they  hereby are declared abolished on and after said January 1, 1904, and all title and interest in all of the school-houses, land, furniture, and other property which was vested in the several districts shall be vested in the town in which the said districts were located.   The property so vested shall, in the case of each town, be appraised by a commission

of three disinterested persons, to be appointed by the common pleas division of the supreme court in the county in which such town is situated, upon the request of the school committee of said town, and at the next annual assessment of taxes thereafter a tax shall be levied upon the whole town equal to the amount of said appraisal; and there shall be remitted to the taxpayers of each district their proportional share of the appraised value of the school property in such district: *Provided*, that if any district be in debt, and said debt be assumed by the town, the amount of said debt shall be deducted from the whole amount to be remitted to the taxpayers of said district. If, however, the parties in interest prefer, the differences in the value of the property of the several districts may be adjusted in such manner as they may agree upon: *Provided*, that the selection of teachers and election of superintendent in such towns as do not unite for the employment of a superintendent, and the entire care, control, and management of all the public school interests of the several towns, shall be vested in the school committee of the several towns."

The bill sets out that at the time of the passage of said act by the General Assembly the complainants were citizens of and owners of estates in said Hopkinton, their estates being located in a joint school district duly created and established in the year 1850, which joint school district comprised school district No. 7, in the town of Richmond, an adjoining municipality, and parts of school districts Nos. 9 and 10, in said town of Hopkinton, and was and is known in the town of Hopkinton as "Joint School District No. 13;" that said joint school district at the time when the act in question was passed by the General Assembly was seized and possessed of certain valuable property, to wit, a lot of land and a school-house thereon, together with school furniture and school books; that on the 23d day of April, 1904, a commission was appointed, in accordance with said act of the General Assembly, to appraise the property vested in the said town of Hopkinton by said act; that said commission did not appraise the property so vested in said town of Hopkinton, but on the contrary appraised only a part thereof, ignoring the aforesaid property belonging to

said joint school district, which was by virtue of said act of the General Assembly vested in the town of Hopkinton and the town of Richmond as tenants in common thereof; that the assessors of the town of Hopkinton, disregarding the fact that there had been no complete appraisal of the school property vested in the town of Hopkinton by said act, proceeded to assess a tax, payable on or before the first day of December, 1904, upon the whole town of Hopkinton, for an amount not authorized by said act, namely, a sum equal to the amount of the said appraisal of a part only of the property vested in the town of Hopkinton by said act, and proceeded to remit to the taxpayers of those abolished school districts whose former property was appraised a proportional part of the appraised value of such property, and so did illegally assess a tax upon the property of the complainants, and did so illegally remit to said certain taxpayers the said proportional amounts, but did not remit any amount to the complainants or other taxpayers in said joint school district No. 13; that said assessors, having completed their intended assessment deposited the same in the office of the town clerk of Hopkinton and that he has made a copy thereof and delivered it to the town treasurer who has issued a warrant to the respondent Herbert E. Lewis, collector of taxes of said town, commanding him to proceed to collect the several sums therein expressed of the persons and estates liable therefor. The complainants further allege that said assessment is illegal and void, because assessed for an amount not authorized by said act of the General Assembly, and that said assessment and warrant do not authorize the said collector of taxes to collect the same; yet that the defendant is proceeding to collect said tax, and threatens to sell the estates of the complainants and all others who shall fail to pay said tax, etc.

The prayer of the bill is that the collection of said tax may be perpetually enjoined, on the ground that it was illegally assessed as aforesaid.

The answer admits all of the material facts alleged in the bill and sets up in defence the fact that a commission was duly appointed to appraise all of the school property in said town of

Hopkinton pursuant to the provisions of said chapter 1101; that said commission appraised the school-houses, lands, furniture, and other property in the school districts of said town of Hopkinton, and made report thereof to the Common Pleas Division, on or about June 1, 1904, whereupon said court ordered the said report to be published in the Hope Valley Advertiser, a public newspaper published in the town of Hopkinton, together with notice that a motion to confirm said report would be heard on the thirtieth day of June, 1904, at a session of the court to be then holden at South Kingstown in the county of Washington; that said report and order were duly published, and thereafterwards, on the thirteenth day of June, 1904, it was ordered that the report of appraisal be established, confirmed, and approved, and that this order is now in full force and effect. And the defendants say that said appraisal, taken in connection with the approval of the Common Pleas Division, has all the force of a judgment, and that the complainants are estopped thereby from claiming that all of the school-houses, lands, and other property that vested in said town of Hopkinton by virtue of said act of the General Assembly were not appraised by said commissioners.

The answer further states that if the commissioners failed or neglected to appraise any of the school property vested in said town of Hopkinton by said act of the General Assembly, such failure arose from mistake and accident on the part of the commissioners, in an honest effort to perform their duty, and not from any intention on their part to do any wrong or commit any fraud, or to deprive these complainants or any other taxpayers of said town of any of their rights. Wherefore, they pray that the bill may be dismissed, and for their costs, etc.

The case is before us on bill and answer, and the following agreed statement of facts, viz.: 1. That the commissioners appointed by the Common Pleas Division of the Supreme Court to appraise the school property vested in the town of Hopkinton by chapter 1101 of the Public Laws did not make any appraisal of the school property which belonged to the so-called "Joint District No. 13" at the time the said school district was abolished by chapter 1101. 2. That no part of

the school tax levied under chapter 1101 on the taxpayers of said district No. 13 is or has been remitted to said taxpayers.

In brief, then, the case as thus stated presents the following facts, viz.: 1. The existence of a joint school district located in two adjoining towns, which district was a body corporate and the owner of certain school property at the time of the passage of said act. 2. The abolition of said school district by the passage of said act, and the vesting of its property in the two towns as tenants in common thereof. 3. A failure on the part of the commissioners appointed under said act to appraise the property therein as required by the statute. 4. A levy and assessment of a town tax on all the taxable property of the town, including that of the complainants, equal to the amount fixed by said appraisers, but which amount did not include the property or any part thereof belonging to said joint school district. 5. A remission by the assessors of the town to the taxpayers in all the school districts thereof, except the taxpayers in joint school district No. 13, of their proportional shares of the appraised value of the school property in their respective districts. And 6—No remittance of any part of said town tax in the case of the complainants and others who are taxpayers in said joint school district.

That such a proceeding is clearly inequitable, and also contrary to the evident spirit and purpose of said act of the General Assembly, requires no argument. Here is a school district legally created and organized, owning valuable school property which the taxpayers thereof have heretofore been assessed to pay for and maintain, which district is abolished by act of the General Assembly and its property vested in the said towns as tenants in common, with direction in said act that in the payment of the town tax which shall be levied for the purpose of raising the amount of the appraisal of the property of all the school districts as determined by the commission, there shall be remitted to the taxpayers of each district their proportional share of the appraised value of the school property in such district. That is, as an offset against the town tax, which is to be assessed against all of the taxpayers in the town under the act, there is to be allowed and credited to the in-

dividual taxpayers of a given school district their proportional share of the appraised value of the school property in their district. By so doing a fair and equitable adjustment of the property rights of the several school districts and the taxpayers therein is evidently intended by the act in question to be secured. See *Town Council, Petitioner*, 18 R. I. 417; *In re Application of School Committee of North Smithfield*, 26 R. I. 164.

In this connection it may be observed that the tax which is to be levied under said act is not a tax for revenue, as it is all to be remitted to the taxpayers under the provisions of said act, but its sole purpose is to equalize the burdens of the new school system upon all the taxpayers of the town. And as it is matter of common knowledge that some school districts are possessed of property which is much more valuable than that possessed by others, some such scheme as the one devised by the General Assembly in said act is necessary in order to do justice as between the taxpayers of such school districts. If, for instance, a given district has property of the value of ten thousand dollars, while an adjoining district has property of only the value of one thousand dollars, it would clearly be very inequitable to require the taxpayers of the first-named district to contribute an equal percentage, with that required of the second, of the amount represented by the entire appraisal of the property of all the school districts in the town; for in the one case an equitable adjustment of the matter might entitle the taxpayers to more than enough to pay their proportional part of the tax, so that as a matter of fact they would not be taxed at all, while in the other case the taxpayers might be called upon to contribute something towards the equalization of the burden aforesaid—or perhaps it may be more properly said, to contribute something towards the common ownership of all the school property, as this is what is intended to be accomplished by the change which the statute makes. The town is to own— indeed, does now own—all of the school property which was heretofore owned by all of the school districts within its borders. And it is only fair to all concerned so to adjust the rights growing out of the previous ownership of said school property by the respective districts as to compel those tax-

payers who have not already contributed an amount equal to their share of the present total value of all the school property in the town to do so, and also to remit to those who have already paid more than their share of said total value, the over-plus heretofore paid by them.

Having thus considered the object and evident purpose of the General Assembly in the passage of said act, and also the effect thereof if properly carried out, we come now to the question as to whether, in view of the steps which have already been taken in the premises, the complainants are entitled to the relief prayed for,

(1)    The respondents contend, first, that, the appraisal having been made in the manner provided by law, and the tax having been assessed in accordance with the appraisal, the validity of the tax can not be questioned.

If we accept the premises as thus stated, we must accept the conclusion arrived at by counsel, for that logically follows; but we are unable to accept his premises.    The appraisal in question was not made in the manner provided by law.    The commissioners did not appraise any part of the property be-longing to joint school district No. 13, which property, as already suggested, upon the passage of said act vested in the towns of Hopkinton and Richmond as tenants in common. On the other hand, they entirely disregarded it.    This was not a compliance with the law, as it requires all of the school dis-trict·property of a town to be appraised.    This provision is mandatory.    The language used is: "The property so vested shall in the case of each town be appraised by a commission of three disinterested persons to be appointed by the common pleas division of the supreme court."    This appraisal forms the basis of the tax which is to be levied upon the whole town and hence is a condition precedent to the laying of any tax under said act.    In the absence of a statutory appraisal, there-fore, no tax can be legally assessed, as there is nothing to base it on.

As is said in 26 Am. & Eng. L. 2d ed. at p. 688: "Clearly, where the legislative purpose would be defeated if the pre-scription of the statute did not imply a prohibition to do the

thing in any other way, there can be no question of the mandatory character of the statute. Where the provision of a statute is the very essence of the thing which it requires to be done, it is imperative or mandatory."

The provisions of said act in regard to the assessment and remittance of the tax are for the benefit of the taxpayers and are also mandatory. 1 Cooley on Taxation, 480; *Young* v. *Joslin,* 13 R. I. 675; *Evans* v. *Newell,* 18 R. I. 38; *McTwiggan* v. *Hunter, ib.* 776. Judge Cooley, *supra,* at p. 480, quoting Field, J., in *French* v. *Edwards,* 13 Wall. 506–11, says: "But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise."

Again, the requirement of the statute that all of the school district property shall be appraised, is a substantial requirement, and hence must be fulfilled in order to render the tax assessed in pursuance thereof a valid one. 2 Cooley, *supra,* 1252; *Beidler Mfg. Co.* v *Muskegon,* 63 Mich. 44; I Desty on Taxation, 257; *Merritt* v. *Portchester,* 71 N. Y. 309; *Hewes* v. *Reis,* 40 Cal. 255.

In the case at bar said requirement of the statute was not fulfilled, and hence the tax was not properly assessed. Again, as well argued by counsel for complainants: "In assessing a tax on the whole town of Hopkinton for an amount equal to an appraisal, which contains no appraisal of the property vested in the town of Hopkinton from the joint school district No. 13, of Hopkinton, and No. 7, of Richmond, the officials of the town have exceeded their authority given under chapter 1101 and hence the tax is void." See 2 Desty, *supra,* 1054 and 1085; *Joyner* v. *School District,* 3 Cush. 567; *Doster* v. *Sterling,* 33 Kans. 381; *Judge of County Court* v. *Taylor,* 71 Ky. 206.

It is also a well-settled rule that a tax can not be legally assessed for a total amount greater than that authorized. This rule is based on the necessity of protecting the taxpayer. *Joy-*

*ner* v. *School District, supra.* And the necessity of protecting the taxpayer is just as potent a reason for holding that a town shall not levy a tax for less than the prescribed amount, when that amount is necessary in order to warrant any assessment at all, as it is under said act in order to make the proper remission required thereby.

Again, the assessment is illegal because no remission of any part of the tax was made or could be made to the taxpayers in joint school district No. 13, although they were clearly entitled to the remission of an amount which should equal the value of the property in that district which was vested in the town by the act, such a remission being in effect payment for property which was purchased by the town of the school district. And, no remission having been made to the complainants and other taxpayers in said school district, they as members thereof under the proceedings aforesaid will receive no payment for their property, which has been purchased as aforesaid and is now owned by the town.

We are therefore of opinion that the assessment in question was illegal and void.

(2)  We come now to the second and principal defence which is interposed by the respondents, viz., that the appraisal objected to was made under the direction of the court, and hence that its accuracy can not be questioned in any collateral proceeding. In other words, the respondents contend, as above set out in their answer, that the appraisal which was made by the commissioners, having been duly approved and confirmed by the court, after public notice by advertisement to all persons interested, has all the force and effect of a judgment, and that the complainants are estopped from now claiming that all of the school district property which vested in the town by virtue of said act of the General Assembly was not duly appraised.

With regard to this defence it is to be observed, in the first place, that said act is silent as to what shall be done with the report of the commissioners after it is made. They are not directed to report to the school committee, upon whose petition alone they can be appointed, or to the assessors of taxes of the town in which the appraised property is situated, or to

the court appointing them. Nor does the decree by which the commissioners were appointed in this case direct them to make report of their doings to the court.

In short, then, the act of the commissioners in making their report was not in accordance with any express authority or direction whatsoever.

We do not, however, feel called upon to criticise in any manner the action of the commissioners in making their report to the court which appointed them, or the action of the court in giving notice of the filing of said report and subsequently approving and confirming the same; as in the absence of any express direction in the premises it would seem to be the natural and proper thing for the commissioners to make report to the court which appointed them, and also for the court to take some action thereon. And our experience is that, whenever school districts have heretofore been abolished by vote of the towns in which they were located, in accordance with Gen. Laws R. I. cap. 54, the practice has been for the commissioners of appraisal of the district property to make report to the court appointing them, as was done in this case.

But even assuming, as we do, that it was the duty of the commissioners to make report of their doings to the court appointing them, and also assuming that the public notice of the filing thereof which was given was reasonable and proper, and that the court had authority to confirm a report made in accordance with the statute, yet, as it appears that said report was not made in accordance with the statute, in that the commissioners failed to appraise the property aforesaid, said confirmation of the report did not, in our judgment, have the effect to render it binding upon the complainants. It could only confirm the doings of the appraisers after they had exercised their judgment in accordance with the statute. And as it appears that said appraisal was not made in compliance with the statute it was null and void, and hence no act of the court by way of confirming the same could make it of any binding force or validity.

(3)   Nor do we think that the complainants are estopped to now insist upon their rights in the premises by reason of their having

been notified in manner aforesaid of the filing of said report. They had the right to presume that the commissioners would discharge their full duty in the premises and would appraise all of the school district property in said town. And they also had the right to rely upon the fact that no tax could legally be assessed against them until the school property in their district had been included in said report. So that, even granting that the complainants knew that the report of the commissioners was fatally defective by reason of the omission aforesaid, yet they would not be estopped from now setting it up, for the reason that, until all of the school district property in said town had been appraised according to the statute, there was no occasion for them to pay any attention whatever to said report.

In *Hassan* v. *Rochester*, 67 N. Y. 528, it was held that, even where the common council had express statutory authority to confirm an assessment, their act in doing so did not preclude the plaintiffs from obtaining the equitable relief demanded; that the provisions of the charter relating to the confirmation of assessments vested no authority in the council to confirm an assessment made in violation of law; that when the statute makes the confirmation conclusive, it has reference to a valid proceeding which is sanctioned by law and is within the jurisdiction of the assessors.

In Desty on Taxation, vol. 2, p. 1272, the author says: "The confirmation of the report of such commissioners" (referring to commissioners of estimate and assessment in laying out a street) "only makes the report final as to matters properly submitted to and determined by them."

In *Black* v. *McGonigle*, 103 Mo. 192, it was held that the fact that a tax in excess of fifty cents on the $100 valuation in violation of the provisions of the constitution (art. 10, § 11) is levied pursuant to an order of the circuit court does not validate it.

In view of the foregoing facts, taken in connection with all the circumstances of the case, we do not think that the complainants can properly be held to be estopped from now asserting their rights in the premises.

"The technical doctrine of estoppel," says Judge Cooley, "is one to be applied with great caution, for it sets aside general rules on supposed equities, and the danger is always imminent that wrong may be done." 2 Cooley on Taxation, 3d ed. 1518.

We think the case of *McTwiggan* v. *Hunter*, 19 R. I. 265, is distinguishable from the case at bar. In that case it was held that the omission by the assessors of taxes to include certain property in an assessment, solely by reason of their mistake as to the binding effect of an agreement for an exemption, and not by intentional disregard of law or other wrongful or fraudulent purpose, did not render their assessment void.

In the case at bar there was no omission on the part of the assessors, but an omission on the part of the commissioners to appraise all of the property which, under the statute, was to form the basis of the assessment. And, as already stated, no legal assessment could be made until all of said property was appraised.

The tax referred to in the *McTwiggan* case was a tax for revenue, while the tax provided for by the act now before us was one to equalize the burdens of the taxpayers as aforesaid, and this could only be accomplished by a strict compliance with the statute.

In the *McTwiggan* case the slight additional burden which fell upon the taxpayers by the omission of the assessors to tax the property there in question fell upon all of the taxpayers of the town equally; while the failure of the commissioners in manner aforesaid resulted in a special burden falling upon a few of the taxpayers of the town of Hopkinton, viz., upon those whose estates were located in said district No. 13, to the advantage of all the other taxpayers in said town in this: that they are not called upon to contribute anything towards the purchase of the property in said district, although the town is now the owner thereof by virtue of said act.

We are therefore of opinion that the case at bar is not controlled by *McTwiggan* v. *Hunter*.

Finally, we are of opinion, for the reasons above given, that

·the complainants are entitled to have the collection of said tax permanently enjoined as prayed.

*W. Louis Frost,* for complainant.

*Clarence A. Aldrich,* for respondents.